IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOSE REYES HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:23CV755 |
| ) | |
| OFFICER REYNOLDS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendants Alvin Reynolds and Jemar Russell's Motion for Summary Judgment. (Docket Entry 26.) Plaintiff Jose Reyes Hernandez has not responded to the motion. The matter is ripe for disposition. For the reasons stated herein, the Court recommends that Defendants' motion for summary judgment be granted.

**I.  BACKGROUND**

Plaintiff, proceeding *pro se*, filed this action against several jail officials alleging use of excessive force during Plaintiff's encounter with them in June 2023 as a pretrial detainee at the Forsyth County Law Enforcement Detention Center. (*See generally* Complaint ("Compl."), Docket Entry 2.)[1] Plaintiff alleges that on June 25, 2023, Defendant Reynolds told Plaintiff and another inmate that their respective food slots were open, to which both men proceeded

---

[1] Plaintiff refers to Defendants Reynolds and Russell in the Complaint as "Officer Reynolds" and "Sgt. Russell."

to close them. (*Id.* at 5.)² Plaintiff alleges that thereafter, Defendant Reynolds threatened to assault him, then left the cell block and returned with Defendant Russell, at which point Defendant Reynolds opened Plaintiff's cell door without placing him in handcuffs, and "attacked [him], pulled [him] from [his] cell, threw [him] to the floor . . . punched [him] twice in [his] face, as [Defendant] Russell held [him] down by both arms." (*Id.*) Defendant Lt. Richardson then arrived, but "ignored [Plaintiff's] pleas that [he] had been unjust[ly] assaulted, and went along with Reynolds and Russell, in justifying[ ] their assault on [Plaintiff]." (*Id.*) Plaintiff alleges that Defendants Russell and Reynolds were subsequently allowed to continue working in his cell block, and that Defendant Reynolds continued threatening and harassing him. (*Id.*) Plaintiff admits arguing with Defendant Reynolds in the past, but he alleges that he has never threatened or assaulted Defendant Reynolds, or any other detention officer at the jail. (*Id.*)

Plaintiff claims that Defendant Reynolds' actions have caused "permanent migraines" that necessitate medication. (*Id.* at 6.) He also alleges that Defendants Richardson and Russell did not keep Defendant Reynolds away from Plaintiff. (*Id.*) In support of his allegations, Plaintiff attaches two Inmate Grievance Forms to his Complaint that assert the same incident as that alleged in the Complaint. (*Id.* at 8-9.) He seeks monetary damages totaling over $1,000,000. (*Id.* at 6.)

Plaintiff initially sued all Defendants in their official capacities to which Defendants moved to dismiss said claims along with any claim for supervisory liability against Defendant

---

² Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

Richardson. (*See* Docket Entries 11, 12.) In turn, Plaintiff sought to leave to file an amended complaint to add individual capacity claims for excessive force against Defendants Reynolds and Russell regarding the same incident alleged in the original Complaint. (*See* Docket Entry 13.) The Court dismissed the official capacity claims against Defendants, any supervisory liability claims against Defendant Richardson, and allowed Plaintiff to supplement his Complaint such that the only remaining claims would be the excessive force claims made against Defendants Reynolds and Russell in their individual capacities. (*See* Docket Entry 16 at 3-8; Docket Entries 18, 21.)

On March 7, 2025, Defendants Reynolds and Russell filed a motion for summary judgment to dismiss Plaintiff's remaining claims with prejudice. (Docket Entry 26 at 1.) In support of their motion, Defendants also filed affidavits on their own behalf (*see* Affidavit of Jemar Russell ("Russell Aff."), Docket Entry 27) and Reynolds (*see* Affidavit of Alvin Reynolds ("Reynolds Aff."), Docket Entry 28), along with several exhibits.

Defendants' affidavits, along with their submitted exhibits, offer a different account of the June 2023 incident. Defendant Russell explained that Plaintiff has been in custody since early August 2020 for First Degree Murder and Interfering with Emergency Communications. (Russell Aff. ¶ 4; *see also* Docket Entry 27-1.) Prior to filing this action, Plaintiff remained in the jail's General Population Housing Unit, and at times, the 8 South Housing Unit ("8 South") when his "behavior pose[d] a safety and/or security risk to the [detention center], staff, and/or other inmates." (Russell Aff. ¶¶ 4-5; *see also* Docket Entry 21-2.) Plaintiff spent time on 8 South from early May 2023 until early August 2023 with full restrictions, meaning "the inmate has lost all privileges such as canteen, formal recreation, regular visitation, and/or the

3

suspension of all group activities." (Russell Aff. ¶¶ 6-10; *see also* Docket Entries 27-3, 27-4, 27-5.)

Defendant Russell also explained that because of Plaintiff's "multiple escape attempts and self-injurious behavior, he was placed under Special Administrative Measures [a SAMs Order]." (Russell Aff. ¶ 11.) This was "used to ensure that inmates do not hurt themselves or others" and "not used as a form of punishment." (*Id.*) Plaintiff was subject to a SAM's Order in April 2023 which "he could only be let out alone when out of his cell" and a SAM's Order in May 2023 which "in addition to being let out alone when out of his cell, he also had to be in full restraints" or "in handcuffs, leg restraints, and a waist chain." (*Id.*; *see also* Docket Entries 27-6, 27-7.)

As to the June 2023 incident, Defendant Reynolds attests that he observed Plaintiff's food pass door propped open during a visual inspection of Plaintiff's cell on 8 South. (Reynolds Aff. ¶ 3.) He told Plaintiff to "keep his food pass door closed" to which Plaintiff responded, "[s]hut the fuck up and get out of my pod." (*Id.* ¶ 4.) Defendant Reynolds left the area, informed Defendant Russell of the incident, then returned to the cell with Defendant Russell to "confiscate the contraband [Plaintiff] used to prop open his food pass door." (*Id.* ¶¶ 4-5; Russell Aff. ¶ 13.) Plaintiff was instructed by Defendant Russell to "step back" so his cell could be opened, but he refused and indicated that "he was supposed to be in restraints." (Russell Aff. ¶ 13.) Defendant Russell attempted to handcuff Plaintiff but "he pulled his arm away" and "jammed a sheet into the crack of his cell door which prevented [Defendant Russell] from opening [the door] all the way." (*Id.*)

4

Upon entering the cell, Plaintiff stated that "[y]a'll gonna have to work for this." (*Id.*; *see also* Reynolds Aff. ¶ 5.) Even after Defendant Russell entered the cell, Plaintiff continued to resist being placed in handcuffs and when Defendant Reynolds entered to assist, Plaintiff "attempted to hit [Defendant Reynolds] in the face with his closed fist with his right hand." (Reynolds Aff. ¶ 5; *see also* Russell Aff. ¶ 13.) "In response, [Defendant Reynolds] swatted [Plaintiff's] hand away and struck [him] in the face twice, with a closed fist." (Reynolds Aff. ¶ 5; *see also* Russell Aff. ¶ 13.) Plaintiff was taken to the ground by Defendants Reynolds and Russell and placed in handcuffs. (*Id.*) Further, "[w]hile on the ground, [Plaintiff] tried to stand up, and he continued to resist and kick at Officer Reynolds until [the jail's Special Response Team] arrived." (Russell Aff. ¶ 13.) Emergency personnel evaluated Plaintiff who had a "cut lip that did not require treatment[.]" (*Id.* ¶ 14.)

Plaintiff was sent a "Roseboro Letter"[3] at the address on file with the Court (at the Forsyth County Law Enforcement Detention Center), informing Plaintiff that a dispositive motion had been filed in the instant action and advising him of the consequences of failing to respond. (Docket Entry 30.) Plaintiff failed to file a response.

## II. DISCUSSION

At the outset, the Court notes that because Plaintiff has failed to file a timely response, Defendants' motion for summary judgment could be granted as a matter of course pursuant to Local Rule 7.3(k). Where a party fails to file a timely response, the motion will be "considered and decided as an uncontested motion, and ordinarily will be granted without

---

[3] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advises *pro se* plaintiffs of their right to file responses to dispositive motions filed by defendants.

further notice." Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (Auld, M.J.) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). Alternatively, the Court recommends that the motion for summary judgment be granted because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.[4]

### A. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,

---

[4] Pursuant to the Court's Local Rules, Plaintiff as a *pro se* litigant must "keep the Court and opposing parties advised as to his . . . current address." M.D.N.C. L.R. 11.1(b); *see also Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988) ("A party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address."). The undersigned's previous Order and Recommendation (Docket Entry 16) was sent to Plaintiff and returned by the U.S. Postal Service marked as "RTS – Return to sender, not deliverable as addressed, unable to forward." (Docket Entry 20.) Also, other Orders (Docket Entries 21, 22) were sent to Plaintiff and returned by the U.S. Postal Service. (*See* Docket Entries 23, 24.) The Local Rules provide that "[i]f mail directed to a *pro se* plaintiff from the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within sixty-three (63) days thereafter of a current address," the Court may dismiss without prejudice the action for failure to prosecute. M.D.N.C. L.R. 11.1(b). Because Plaintiff has failed to notify the Court of a current mailing address in a timely manner, this too would be alternative grounds for dismissal of this action, although *without* prejudice.

475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Moreover, "[o]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (citations omitted). The party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

    **B. There exists no genuine issue of material fact as to whether Defendants used excessive force.**

Defendants first contend that they did not use excessive force "and because there is no genuine [issue] of material fact as to this, Plaintiff's lawsuit must be dismissed with prejudice." (Docket Entry 29 at 11.) Excessive force of a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction "the use of excessive force that amounts to punishment." *Sawyer v. Asbury*, 537 Fed. Appx. 283, 290 (4th

7

Cir. 2013) (citation omitted); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Courts employ an objective reasonableness standard to analyze excessive force claims under the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (concluding that "the appropriate standard for [assessing] a pretrial detainee's excessive force claim is solely an objective one"). "Under this standard, the officer's 'underlying intent or motivation' is irrelevant; rather the focus is on 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.' " *Oliver v. Baity*, 208 F. Supp. 3d 681, 695 (M.D.N.C. 2016) (quoting *Graham*, 490 U.S. at 397; *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001)); *see also Kingsley*, 576 U.S. at 397 (finding that a court must determine objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight"); *Duff v. Potter,* 665 Fed. Appx. 242, 244 (4th Cir. 2016) (unpublished) ("Because the standard is an objective one, the court is not concerned with the officers' motivation or intent."). A plaintiff can "prevail by showing that the [defendant's] actions are not 'rationally related to a legitimate nonpunitive governmental purpose or that the actions 'appear excessive in relation to that purpose.' " *Kingsley*, 576 U.S. at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The following factors are considered to determine the reasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. Considering the record before the Court, the undersigned concludes that Defendants' conduct was objectively reasonable under the circumstances.

As to the first *Kingsley* factor (the relationship between the need for the use of force and the amount of force used), this factor weighs in favor of Defendants. The evidence demonstrates that Plaintiff was non-compliant with officers and the initial aggressor, first attempting to assault Defendant Reynolds, placing Defendant Reynolds under a reasonable threat of imminent physical harm, thus requiring Defendants to make the kind of "split second judgments" to which courts defer to an officer's perspective, knowledge, and need to "maintain order and institutional security." *Id.* at 399-400. Even under this pressure, the amount of force applied to Plaintiff—two closed fist strikes to Plaintiff's head and the force required to take Plaintiff to the ground to restrain him—was "simply that necessary to [restore order and] maintain control . . . [and] [a]ny use of force immediately ended" once Defendants placed Plaintiff into restraints. *Wilson v. O'Bryant*, No. 3:22CV556 (DJN), 2024 WL 1683613, at *7 (E.D. Va. Apr. 18, 2024) ("In this instance, the need for the use of force was great, and the amount of force used was necessary, proportionate, and appropriate in light of the circumstances." (quotations and citation omitted)); *Perdue v. Harrison*, No. 1:17CV403, 2018 WL 1940416, at *4 (M.D.N.C. Apr. 23, 2018) ("In response to Plaintiff pushing his box of belongings against Defendant and assuming an aggressive stance, Defendant employed a maneuver intended to immobilize Plaintiff while minimizing potential injuries to him. Under these circumstances, a reasonable relationship existed between the need for force and the amount of force Defendant used."). Thus, this factor weighs in Defendants' favor.

As to the second *Kingsley* factor (the extent of Plaintiff's injury), this factor weighs in favor of Defendants. Defendants aver that Plaintiff only suffered "a cut lip that did not require treatment." (Russell Aff. ¶ 14.) Thus, these injuries are minor and belies Plaintiff's claims of

the use of excessive force. *See Garcia v. Gardner*, No. CV 14–5357, 2015 WL 6123067, at *4 (W.D. Ark. Aug. 21, 2015) ("The minimal injuries suffered by [plaintiff], a reddened area on his forehead and a small abrasion on his left nostril, even if [the court] assume[s] these minor injuries were caused by the conduct of the [defendant] deputies . . ., belies the use of any excessive force."), *report and recommendation adopted,* No. 5:14–CV–05357, 2015 WL 6125918 (W.D. Ark. Oct. 16, 2015). While Plaintiff alleges that his injuries from the incident include "now permanent migraines" which require Plaintiff to take "headache medication" (Compl. at 6), at this juncture, "[a]llegations contained in a complaint are not evidence, and cannot defeat a motion for summary judgment." *Cambridge Capital Grp. v. Pill*, 20 Fed. App'x. 121, 124-25 (4th Cir. 2001). Notwithstanding such, even if the Court were to accept Plaintiff's account of his injuries, such injuries are still relatively minor, and this factor would still weigh in Defendants' favor. *See Greene v. Cnty. of Durham Off. of the Sheriff Dep't*, No. 1:14-CV-153, 2016 WL 4507355, at *10 (M.D.N.C. Aug. 26, 2016) ("It is possible for a reasonable fact-finder to conclude on this record that [Plaintiff] suffered bruising, soreness, and a head injury. Nonetheless, the record reflects that these injuries were relatively minor, so this factor weighs in favor of the defendants."); *Perdue*, 2018 WL 1940416, at *5 ("Even if Plaintiff did suffer the injuries that he alleged, given that they merited treatment with only ibuprofen, his injuries appear to qualify as 'relatively minor.' " (citation omitted)).

The third *Kingsley* factor (any effort made by the officer to temper or to limit the amount of force) weighs in Defendants' favor as well. Prior to using force, Defendants requested that Plaintiff close his food pass door, which Plaintiff resisted by telling Defendants to "[s]hut the fuck up and get out of my pod." (Reynolds Aff. ¶ 4.) Plaintiff then failed to comply with

10

requests to step back and failed to comply with being placed in handcuffs. (Russell Aff. ¶ 13.) Moreover, Plaintiff attempted to strike Defendant Reynolds. (Reynolds Aff. ¶ 5.) Ultimately, Defendants afforded Plaintiff with ample opportunities to comply, and rather than comply, Plaintiff escalated the situation. Therefore, this factor weighs in Defendants' favor. *See Johnson v. Johnson*, No. 5:20-CV-1664-SAL-KDW, 2022 WL 4163050, at *11 (D.S.C. July 11, 2022) (concluding that the third *Kingsley* factor favored the defendant because he "initially tried to avoid the use of force by repeatedly asking [the p]laintiff to comply with being 'cuffed up' "), *report and recommendation adopted*, No. 4:20-CV-1664-SAL, 2022 WL 3224669 (D.S.C. Aug. 10, 2022), *aff'd*, No. 22-7016, 2023 WL 334418 (4th Cir. Jan. 20, 2023).

The remaining *Kingsley* factors (the severity of the security problem at issue, the threat reasonably perceived by officers, and whether the plaintiff was actively resisting) all weigh in favor of Defendants. Plaintiff's use of contraband to jam open his food pass door, failure to comply with orders to shut the door and failure to comply with orders to be handcuffed are obvious security threats because as Defendants aver, the jail has a strong interest in maintaining safe and sanitary cell environments. (Reynolds Aff. ¶ 5; Russell Aff. ¶¶ 11, 13.) Further, an objectively reasonable threat existed given Defendants' awareness of Plaintiff's "multiple escape attempts and self-injurious behavior[,]" his 8 South status, other offenses, and multiple SAMs Orders "because [Plaintiff's] behavior pose[d] a safety and/or security risk" to others. (Russell Aff. ¶¶ 5-11, *see generally* Docket Entries 27-4, 27-5, 27-6, 27-7.) Furthermore, when Defendant Russell attempted to handcuff him, Plaintiff resisted by moving his arms away multiple times. (Russell Aff. ¶ 13.) Again, beyond non-compliance, Plaintiff tried to assault Defendant Reynolds. (Reynolds Aff. ¶ 5; *see also Haizlip v. Alston*, No.

11

1:14CV770, 2016 WL 4184426, at *18 (M.D.N.C. Aug. 5, 2016) (finding reasonably perceived threat where "[p]laintiff had just attempted to engage [the jail official] in a physical altercation and then resisted [the jail official's] efforts to put him in the holding cell").) Finally, the evidence is clear that Plaintiff actively resisted Defendants' orders, and such active resistance and refusal to cooperate escalated the situation beyond Defendants' good faith attempts to temper the situation. *Kingsley*, 567 U.S at 397; *see also Terry v. Jarrell*, No. 3:22CV774, 2023 WL 2588456, at *6 (E.D. Va. Mar. 21, 2023) (unpublished) (ruling that the plaintiff-detainee's acts of "disregard[ing] verbal commands and attempts to deescalate the situation [and] openly challeng[ing the defendant-]officers" constituted active resistance for purposes of sixth *Kingsley* factor).

In sum, and in view of all record evidence, no reasonable juror could conclude that "the force purposely or knowingly used against [Plaintiff during the June 2023 incident] was objectively unreasonable." *Kingsley*, 576 U.S. at 397. Again, Plaintiff has failed to respond to Defendants' motion for summary judgment and the unverified allegations in the Complaint will not suffice to defeat a motion for summary judgment. *See Cambridge Capital Grp.*, 20 Fed. App'x. at 124-25; *Stafford v. Stout*, No. 1:20CV731, 2023 WL 3006102, at *9 (M.D.N.C. Apr. 19, 2023) ("Plaintiff's unverified allegations to the contrary do not suffice at this stage." (citation omitted)). Therefore, Defendants' motion for summary judgment should be granted. *See Rojo v. Holderbaum*, No. 8:15-CV-1982-T-33JSS, 2016 WL 7116207, at *7 (M.D. Fla. Dec. 7, 2016) (finding no constitutional violation where detainee "transitioned from passive noncompliance to active resistance while he was unsecured by kicking his boxer shorts at [officer], yelling 'fuck you,' and taking a step toward [officer] in the process[,] [which] [i]n

12

response, [officer] delivered a single strike to [detainee's] face"); *Scarbro v. New Hanover Cnty.*, 374 Fed. App'x 366, 370 (4th Cir. 2010) ("'[The Court] must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.' " (internal quotations and citation omitted)).

### C. Defendants are entitled to qualified immunity.

Alternatively, Defendants argue that they are entitled to qualified immunity. (Docket Entry 29 at 12-14.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Defendants did not use excessive force during the June 2023 incident. Therefore, the undersigned concludes that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (holding that "[i]f

13

Case 1:23-cv-00755-CCE-JLW   Document 31   Filed 06/24/25   Page 13 of 14

[an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Defendants Alvin Reynolds and Jemar Russell's Motion for Summary Judgment (Docket Entry 26) be **GRANTED**, and this action be dismissed with prejudice.

/s/ Joe L. Webster
United States Magistrate Judge

June 24, 2025
Durham, North Carolina